| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO | | |

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| HÉCTOR ROMÁN MONTAÑEZ<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | KLRA202400007 consolidado con KLRA202400020 | *Revisión Judicial,* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>Confinado número P676-30292<br><br><br>Sobre:<br>Revisión Programas de Desvíos (Pase Extendido con Monitoreo Electrónico)<br><br>Revisión Programas de Desvíos (Evaluación del Programa Religiosos y Hogar Crea) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de marzo de 2024.

Compareció ante este Tribunal la parte recurrente, el Sr. Héctor Román Montañez (en adelante, "el señor Román Montañez" o el "Recurrente"), quien se encuentra confinado en la Institución Correccional Guerrero Aguadilla, mediante dos recursos de revisión judicial bajo los alfanuméricos KLRA202400007 y KLRA202400020, presentados el 8 y el 12 de enero de 2024, respectivamente. Nos solicitó la revocación de dos (2) determinaciones emitidas por la Oficina de Programa de Desvíos y Comunitario del Departamento de Corrección y Rehabilitación (en adelante, "DCR") el 27 de septiembre de 2023, ambas notificadas el 5 de diciembre de 2023. Dichas determinaciones fueron objeto de dos (2) solicitudes de reconsideración presentadas por el señor Román Montañez

el 18 de diciembre de 2023. El DCR reafirmó sus conclusiones mediante dictámenes emitidos el 20 de diciembre de 2023.

Por los fundamentos que expondremos a continuación, se *confirman* las determinaciones de la DCR emitidas el 27 de septiembre de 2023.

**I.**

El caso de autos se originó el 30 de junio de 2023, cuando el Comité de Clasificación y Tratamiento de la Institución Correccional Guerrero Aguadilla (en adelante, "CCT") determinó que el señor Román Montañez se podía beneficiar de un nivel de supervisión menor en la institución penal. Así pues, fue reclasificado de custodia mediana a custodia mínima y referido tanto al Programa Pase Extendido con Monitoreo Electrónico, como al Programa Religioso y Hogar CREA, respectivamente. Así las cosas, el 27 de septiembre de 2023, la Coordinadora de Programas de Desvíos, la Sra. Selma Ríos Calderón, denegó ambos referidos para participar de dichos programas, argumentando que el Recurrente no era elegible debido a que el Artículo 3 de la derogada Ley Núm. 315-2004,[1] excluía a aquellas personas convictas por el delito de asesinato en primer grado de participar de cualquier de los programas de desvío disponibles. En particular, ambas determinaciones administrativas indicaron lo siguiente:

> Desde la fecha de los hechos al presente bajo el Plan de Reorganización del DCR #2 del 21 noviembre de 2011 en su Artículo #16[,] según enmendado[,] se excluye del beneficio de Programas de Desvío el delito de Asesinato en Primer Grado[.]

El 18 de diciembre de 2023, el señor Román Montañez presentó dos solicitudes de reconsideración. A través de estos escritos, alegó que las determinaciones del DCR fueron contrarias a derecho porque no se basaron en evidencia sustancial e incumplían con el mandato constitucional de rehabilitación promulgado en la Ley Núm. 2-2011, según enmendada, conocida como el "Plan de Reorganización del Departamento de Corrección y Rehabilitación", 3 LPRA Ap. XVIII *et seq.*, y con el

---

[1] La Ley Núm. 315 de 15 de septiembre de 2004 enmendó los Artículos 5, 10, 10A, 16, 17, 20 y 50 de la derogada Ley Núm. 116 de 22 de julio de 1974, según enmendada, conocida como la "Ley Orgánica de la Administración de Corrección", 4 LPRA secs. 1101 *et seq.*

Reglamento Núm. 9497, *infra*. Evaluados sus planteamientos, el 20 de diciembre de 2023, el DCR reiteró sus determinaciones.

Inconforme con lo anteriormente resuelto, el Recurrente acudió ante este Tribunal mediante los recursos de revisión judicial, bajo los alfanuméricos KLRA202400007 y KLRA202400020. En cuanto al caso núm. KLRA202400007, el Recurrente sostuvo que el DCR cometió los siguientes errores:

PRIMER ERROR: Erró el DCR al no basar su determinación en evidencia sustancial, erró en la aplicación e interpretación de las leyes y los reglamentos que se le han encomendado administrar, lesionando así los derechos fundamentales del recurrente, al actuar así, arbitraria, caprichosa, irrazonable e ilegalmente habiendo emitido una determinación carente de base racional y contraria a derecho.

SEGUNDO ERROR: Erró el DCR al aplicar [las] disposiciones de la Ley Núm. 315 del 15 de septiembre de 2004[,] Art. 3(E), la cual fue derogada por el Plan de Reorganización del DCR #2 del 21 de noviembre de 2011. (Ley Núm. 182-2009).

TERCER ERROR: Erró el DCR al no conceder al recurrente poder participar del Programa de Pase Extendido con Monitoreo Electrónico, ignorando así que su actuación supone un grave perjuicio para el Recurrente, en tanto interrumpió el proceso de Rehabilitación emprendido por este, proceso que constituye la meta principal del sistema penal según la carta magna.

CUARTO ERROR: Erró el DCR al incumplir con el mandato constitucional de Rehabilitación al utilizar como único factor en la determinación denegada, que su delito de asesinato en primer grado lo excluye de participar en dicho programa, pasando por alto el Reglamento de Actividades y Nuevas Oportunidades de Rehabilitación y Tratamiento Núm. 9497 del 11 de septiembre de 2023.

QUINTO ERROR: Erró el DCR al denegar el Programa de Paso Extendido con monitoreo electrónico al recurrente impidiendo y/o coartando la Política Pública de la Agencia, Art. VI sec. 19 de la Constitución del Estado Libre Asociado de Puerto Rico LPRA Tomo 1, ya que a través de dicho Programa, viabiliza que el confinado trabaje para el sustento económico de sus familiares o estudios mientras utiliza un brazalete electrónico, el cual es el deseo e interés del suscribiente. (Trabajar o estudiar).

En lo que respecta al caso bajo el alfanumérico KLRA202400020, el señor Román Montañez le imputó al foro recurrido la comisión de los siguientes errores:

PRIMER ERROR: Erró el DCR al no basar su determinación en evidencia sustancial, erró en la aplicación e interpretación de las leyes y los reglamentos que se le han encomendado administrar, lesionando así los derechos fundamentales del

recurrente, al actuar así, arbitraria, caprichosa, irrazonable e ilegalmente habiendo emitido una determinación carente de base racional y contraria a derecho.

SEGUNDO ERROR: Erró el DCR al aplicar [las] disposiciones de la Ley Núm. 315 del 15 de septiembre de 2004[,] Art. 3(E), la cual fue derogada por el Plan de Reorganización del DCR #2 del 21 de noviembre de 2011. (Ley Núm. 182-2009).

TERCER ERROR: Erró el DCR al no conceder al recurrente poder participar del Progr[ama] Religioso y Hogar Crea, ignorando así que su actuación supone un grave perjuicio para el recurrente, en tanto interrumpió el proceso de Rehabilitación emprendido por éste, proceso que constituye la meta principal del sistema penal según la carta magna.

CUARTO ERROR: Erró el DCR al incumplir con el mandato constitucional de Rehabilitación al utilizar como único factor en la determinación denegada, que su delito de asesinato en primer grado lo excluye de participar en dicho programa, pasando por alto el Reglamento de Actividades y Nuevas Oportunidades de Rehabilitación y Tratamiento Núm. 9497 del 11 de septiembre de 2023.

QUINTO ERROR: Erró el DCR al denegar el Progr[ama] Religioso y Hogar Crea al recurrente impidiendo y/o coartando la Política Pública de la Agencia, Art. VI sec. 19 de la Constitución del Estado Libre Asociado de Puerto Rico LPRA Tomo 1, ya que a través de dicho Programa viabiliza y promueve la Rehabilitación del confinado.

El 1 de marzo de 2024, el DCR presentó su alegato en oposición al recurso.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados.

Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello,

quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas

y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

El Artículo VI, Sección 19 de nuestra Carta Magna establece la política púbica del Estado de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1.

De conformidad con dicho axioma constitucional, el Artículo 2 del Plan de Reorganización Núm. 2-2011, según enmendado, conocido como el "Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011", 3 LPRA Ap. XVIII (en adelante, el "Plan de Reorganización), dispone que:

> La política pública del Gobierno de Puerto Rico a través de la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA Ap. XVIII, Art. 2.

En lo concerniente a la controversia ante nos, la implementación de Programas de Desvíos es uno de los métodos para alcanzar la rehabilitación. Esto es, programas que permiten que las personas convictas cumplan parte de su sentencia fuera de la institución correccional. 3 LPRA, Ap. XVIII, Art. 3 (v). Sin embargo, el Artículo 16 del Plan de Reorganización, *supra,* excluye la participación de ciertos miembros de la comunidad correccional en los programas de desvíos establecidos por el DCR. Así pues, las personas que han sido convictas por los siguientes delitos no son elegibles: (1) producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil; (2) violaciones a la Ley Núm. 4 de 23 de junio de 1971, conocida como la "Ley de Sustancias Controladas de Puerto Rico", según enmendada, excepto las violaciones al

Artículo 404 de dicho estatuto, 24 LPRA sec. 2402; (3) violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como la "Ley de Explosivos de Puerto Rico", 25 LPRA secs. 561 *et seq.*; y (4) **toda persona convicta por delito grave de primer grado**, entre otros. 3 LPRA Ap. XVIII, Art. 16 (énfasis suplido).[2]

Por otra parte, a tenor con las disposiciones del Artículo 7, inciso (aa), del Plan de Reorganización, el DCR tendrá la facultad para:

> [A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA Ap. XVIII, Art. 7 (aa).

En concordancia con las facultades previamente especificadas, el DCR adoptó el Reglamento Núm. 9497 de 11 de septiembre de 2023, conocido como el "Reglamento de Actividades y Nuevas Oportunidades de Rehabilitación y Tratamiento" (en adelante, "Reglamento Núm. 9497"). Éste fue creado con el objetivo de propiciar la rehabilitación y preservar el orden y la seguridad tanto en las instituciones correccionales, como en la comunidad. Así, aborda las normas relacionadas a la participación de los miembros de la población correccional en las actividades, dentro y fuera de las instituciones correccionales.[3] Específicamente, regula los siguientes programas: (1) bandas musicales, (2) teatro correccional, (3) atletas de alto rendimiento, (4) brigadas y (5) artesanal.

Según el aludido Reglamento, los miembros de la población correccional clasificados en custodia mínima pueden participar de las actividades en la libre comunidad, siempre que presenten un estado emocional estable y hayan arrojado negativo en las pruebas de dopaje en el último año. *Véase*, Art. VII (B) (1) (a) del Reglamento Núm. 9497, *supra*. No son elegibles para participar de estos programas las personas que: (1) tengan historial de delito de fuga o su tentativa en los últimos dos (2) años, incluyendo cargos actuales pendientes de resolver; (2) que tengan casos

---

[2] Esta disposición estatutaria fue enmendada mediante la aprobación de la Ley Núm. 79-2022, para incluir el alcance legal actual del Artículo 16 del Plan de Reorganización.
[3] Introducción al Reglamento Núm. 9497, *supra*.

pendientes por resolver; o (3) que pese una resolución administrativa disciplinaria por haber incurrido en actos prohibidos en los últimos seis (6) meses. *Véase*, <u>Art. VII (B) (1) (b) del Reglamento Núm. 9497</u>, *supra*. No obstante, los miembros de la comunidad correccional que estén cumpliendo una pena por cualquier delito grave de segundo grado o un delito de mayor severidad pueden participar en actividades, siempre y cuando hayan obtenido una dispensa o permiso especial. (Énfasis suplido).

Respecto a su vigencia, el Reglamento dispone lo siguiente:

Este Reglamento, una vez promulgado por el (la) Secretario(a), comenzará a regir a los treinta (30) días, luego de haber sido aprobado por el Departamento de Estado y de haber cumplido con las formalidades de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico. *Véase*, <u>Art. XVII del Reglamento Núm. 9497</u>, *supra*.

**III.**

Por estar íntimamente relacionados los señalamientos de error en ambos recursos presentados por el Recurrente, procedemos a discutirlos en conjunto.

En síntesis, el señor Román Montañez alega que el DCR erró: (1) al no basar sus determinaciones en evidencia sustancial; (2) en la aplicación e interpretación de las leyes y reglamentos; (3) al aplicar disposiciones de la Ley Núm. 315-2004; (4) al no conceder al recurrente poder participar de en el Programa Pase Extendido con Monitoreo Electrónico y en el Programa Religioso y Hogar CREA, respectivamente; y al (5) pasar por alto el Reglamento Núm. 9497, *supra*. No nos convence su postura. Veamos por qué.

Surge del expediente de nuestro caso que, el 18 de octubre de 2011, el Recurrente fue sentenciado a una pena de reclusión de 129 años por los delitos de asesinato en primer grado, amenaza o intimidación a testigos e infracción a los Artículos 5.04 y 5.15 de la derogada Ley Núm. 404-2000, según enmendada, conocida como la "Ley de Armas de Puerto Rico", 25 LPRA secs. 458c y 458n, respectivamente. Así las cosas, el 30 de junio de 2023, fue reclasificado a custodia mínima y referido a los programas de desvío en controversia. El 27 de septiembre de 2023, le denegaron las

solicitudes para disfrutar de ambos Programas, bajo el fundamento de que el delito de asesinato en primer grado es un delito excluido de dichos beneficios.

Sobre el particular, es menester destacar que la Ley Núm. 315-2004, vigente al momento de la comisión de los delitos y de que el Recurrente fuera sentenciado, disponía que las personas que estuvieran cumpliendo una sentencia por el delito de asesinato no serían elegibles para participar en los programas de desvío o tratamiento y rehabilitación establecidos por el DCR. De igual manera, el Artículo 16 del Plan de Reorganización, *supra*, actualmente establece que las personas que han sido convictas **por delitos grave de primer grado no son elegibles para participar de Programas de Desvíos**. 3 LPRA Ap. XVIII, Art. 16.

Por otra parte, si bien es cierto que el Reglamento 9497, *supra*, permite que los miembros de la comunidad correccional que estén cumpliendo una pena por cualquier delito grave de segundo grado o un delito de mayor severidad participen de ciertas actividades recreativas, no es menos cierto que dicho cuerpo reglamentario fue aprobado el 7 de septiembre de 2023 y entró en vigor el 11 de octubre de 2023. Por tanto, el aludido Reglamento fue efectivo luego de realizarse las determinaciones impugnadas en los casos de epígrafe, respecto a la elegibilidad del señor Román Montañez a los Programas. Nótese que los referidos se realizaron en el mes junio de 2023, se denegaron en septiembre de 2023 y no fue hasta octubre del mismo año que el referido Reglamento comenzó a regir.

Además, aún si ignoráramos lo anterior, si las solicitudes hubieran sido presentadas en un momento posterior a la vigencia del Reglamento, nuestra conclusión hubiera sido la misma. La disposición máxima aplicable a los hechos de nuestro caso lo es el Artículo 16 del Plan de Reorganización, *supra*, que excluye a las personas que han cometido el delito de asesinato en primer grado de participar de programas de desvío. 3 LPRA Ap. XVIII, Art. 16. A causa de lo antes establecido, es patente que el señor Román Montañez no es elegible para participar de los programas

de Pase Extendido con Monitoreo Electrónico ni del Programa Religioso y Hogar CREA.

En vista de lo anterior, concluimos que el DCR actuó correctamente al denegar las peticiones del Recurrente, pues del expediente ante nuestra consideración se desprende que éste fue sentenciado por el delito de asesinato en primer grado, el cual está excluido de los beneficios de los programas de desvío, por disposición del Artículo 16 del Plan de Reorganización, *supra*.

Así pues, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Sentencia*, *confirmamos* las determinaciones emitidas por el DCR el 27 de septiembre de 2023 mediante las que se le denegó al señor Román Montañez el beneficio de participar del Programa Pase Extendido con Monitoreo Electrónico y del Programa Religioso y Hogar CREA, respectivamente.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones